**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| VERMIN LOVE SUPREME, an individual; | ) ) ) | Civil Case No. 1:17-cv-670 |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | **VERIFIED 42 U.S.C. § 1983 COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES** |
| THE CITY OF CONCORD; BRADLEY C. OSGOOD in his official capacity as the Chief of Police of the City of Concord Police Department; POLICE OFFICERS JOHN DOES and JANE ROES NOS. 1-4, in their individual and official capacities as employees of the City of Concord Police Department; EUGENE BLAKE in his individual and official capacity as Health and Licensing Officer at the Health and Licensing Department and/or the Code Administration Department at the City of Concord; JOHN DOES and/or JANE ROES NOS. 1-4, in their individual capacities as employees of the Code Administration Department and/or Health and Licensing Department at the City of Concord; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

RANDAZZA | LEGAL GROUP

<u>**COMPLAINT**</u>
**(INJUNCTIVE RELIEF REQUESTED)**

Plaintiff Vermin Love Supreme ("Plaintiff" or "Mr. Supreme") brings this civil rights action for injunctive relief, declaratory relief, and damages. This is an action under 42 U.S.C. § 1983 to address violations of his rights secured by the First Amendment of the United States Constitution and the rights secured under the

Constitution of the State of New Hampshire, Article 22.  Plaintiff seeks a permanent injunction, declaratory relief, and should be awarded damages, costs, attorneys' fees, and any other relief to which he is entitled as a victim of civil rights violations.

<u>**INTRODUCTION**</u>

1.      Plaintiff Vermin Love Supreme is a political activist who has run for various elected offices since the 1980s including President of the United States.

2.      Mr. Supreme wishes to exercise his First Amendment Right to engage in political speech by protesting outside of bookstore where former Presidential Candidate Hillary Clinton will be signing her new book on Tuesday, December 5, 2017.  However, the Defendants are using state power to frustrate that wish.

3.      Hillary Clinton's book engages in a direct attack on to Mr. Supreme's long standing political platform, as described in more detail below, wherein he advocates for the socialized distribution of equine companions[1] to every American.

4.      Mr. Supreme wishes to engage in constitutionally protected free speech by protesting outside on the public pathway with two live ponies as a symbol of his key political platform and a center point of his political message.

5.      Mr. Supreme has been warned by the Defendants that if he wishes to engage in this kind of political speech, he will need a permit.

6.       Mr. Supreme attempted to obtain permits, and despite the fact that ponies are allowed outside at the location of the protest, Defendants have denied Mr. Supreme's request for a permit the day of Mrs. Clinton's book signing, offering instead to issue a permit for the ponies on a different day in the same location.

---

[1]   Mr. Supreme's long standing platform has been centered on free ponies for all Americans, which would include a federal pony identification system and a law that each American must have their pony with them at all times.

7.      Mr. Supreme's message will be lost if he is not able to protest Hillary Clinton outside near the book signing.

8.      Defendants have chilled speech that lies at the core of the First Amendment and imposed an unconstitutional prior restraint on Plaintiff as he will be unable to engage in protected political speech if he follows the defendants' mandates.   Defendants should be enjoined from further infringing Plaintiff's constitutional rights, made to pay damages for the violations that have already occurred, and made to pay attorneys' fees to compensate Plaintiff for the expense of vindicating his constitutional rights.

## JURISDICTION AND VENUE

9.      This Court has original subject matter jurisdiction over the federal Constitutional violations alleged in this Complaint pursuant to the provisions of 42 U.S.C. § 1983 and 28 U.S.C. § 1331 & 1343.  This Court has jurisdiction to issue injunctive and declaratory relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

10.     Plaintiff's claims for declaratory relief and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

11.     Venue is proper in the District of New Hampshire pursuant to 28 U.S.C. § 1391.  All Defendants reside in New Hampshire and all actions pertinent to this complaint occurred in Merrimack County, New Hampshire.

## THE PARTIES

12.     Plaintiff Vermin Supreme is a resident of the Commonwealth of Massachusetts. He is a civically concerned individual who regularly engages in political speech and political campaigns.

13.     Defendant City of Concord (the "City") is a municipal corporation duly incorporated and authorized under the laws of the State of New Hampshire pursuant to its Charter.  The City of Concord is authorized under the laws of the

State of New Hampshire to maintain a police department, the Concord Police Department ("CPD"), a code administration department and a health and licensing department, the Concord Code Administration Department ("CAD"), and the Concord Health & Licensing Services Department ("CHLSD"); (known collectively as the "Departments"). These Departments act as Concord's agent in the area of law enforcement, licensing, and health inspections, and for which the City is ultimately responsible.

14.   The City assumes the risks incidental to the maintenance the Departments and the employment of all individuals in these Departments. At all relevant times, the City and its Departments hired, employed, supervised, and controlled the individual Defendants.

15.   Defendant Bradley C. Osgood ("Chief Osgood"), is and/or was at all times relevant herein, the Chief of Police of the CPD, an officer, employee, and agent of the CPD, a municipal agency of the City. He is duly appointed and acting as an officer of the CPD. Chief Osgood is sued in his official capacity.

16.   Defendant Police Officers John Does and/or Jane Does Nos. 1-4, are and/or were at all times relevant herein officers, employee, and agents of the CPD, a municipal agency of the City. They are duly appointed and acting as officers of the CPD. They are each sued in their individual and official capacity.

17.   Defendant Eugene Blake ("Mr. Blake") is and/or was at all times relevant herein, a Health and Licensing Officer at either CAD and/or CHLSD, employee, and agent of CAD and/or CHLSD, a municipal agency of the City. He is sued in his individual and official capacity.

18.   Defendants John Does and/or Jane Roes Nos. 1-4, are and/or were at all times relevant herein officers, employee, and agents of CAD and/or CHLSD, municipal agencies of the City. They are each sued in their individual and official capacity.

## STANDING

19.     Plaintiff is directly affected by Defendants' unlawful activities because he is the direct target of Defendant's unlawful prior restraint of his free expression and right to petition.

20.     Defendants' activities have caused a violation of Plaintiff's rights under the U.S and New Hampshire Constitutions. Thus, the requirements for Article III standing have been met.

## FACTS COMMON TO ALL CLAIMS

21.     Vermin Love Supreme spent several decades running for political office and has run for President of the United States seven times.

22.     Mr. Supreme has always had a groundswell of support in New Hampshire, and in fact he placed fourth in New Hampshire's Democratic primary election in 2016.[2]

23.     Part of Mr. Supreme's long standing campaign platform has centered on socialized distribution of equine companions which some have interpreted as commentary, satire, and political parody about a political system that rewards candidates who promise free benefits without discussing cost or practicality.[3]

---

[2]     *See* Rebecca Kaplan, *Vermin Supreme finishes fourth in N.H. Democratic primaries* CBS NEWS (Feb. 10, 2016) available at <https://www.cbsnews.com/news/vermin-supreme-finishes-fourth-in-new-hampshire-democratic-primary/>

[3]     *See* Megan Specia, *A man with a boot on his head got more primary votes than Jim Gilmore in New Hampshire*, Mashable (Feb. 10, 2016) available at <http://mashable.com/2016/02/10/vermin-supreme-new-hampshire-primary/#nnczONU_UgqY>

24.     Hillary Clinton ("Mrs. Clinton") is a long-serving politician and she was the 2016 Democratic Presidential Candidate, and she recently wrote a book, called "What Happened" about the 2016 Presidential campaign.[4]

25.     In part of the book, Mrs. Clinton criticizes her main Democratic rival in the campaign, Bernie Sanders, with a passage that describes a Facebook post she agreed with:

> Bernie: "I think America should get a pony."
> Hillary: "How will you pay for the pony?  Where will the pony come from?  How will you get Congress to agree to the pony?"
> Bernie: "Hillary thinks America doesn't deserve a pony."
> Bernie Supporters: "Hilary hates ponies!"
> Hillary: "Actually, I love ponies."
> Bernie Supporters: "She changed her position on ponies! #WhichHillary #WitchHillary"
> Headline: HILLARY REFUSES TO GIVE EVERY AMERICAN A PONY.
> Debate Moderator: "Hillary, how do you feel when people say you lie about ponies?"[5]

26.     Mr. Supreme, and his supporters, immediately understood this passage to be a direct comment on Mr. Supreme's long standing platform, since giving every American a pony has long been associated with Mr. Supreme's political platform.

27.     Recently, Mr. Supreme, and his supporters, learned that Mrs. Clinton will be giving a book signing at Gibson's Bookstore in Concord, New Hampshire.

28.     The book signing will take place on Tuesday, December 5, 2017 at 1:00 p.m.

---

[4]     *See* Hillary Clinton, *What Happened,* SIMON & SCHUSTER (Sept. 12, 2017).
[5]     *See* the full book excerpt at Madison Malone Kircher, *Because Politics in the 21st Century Is an Endless Meme War, Hillary Clinton's Book Features at Least One Viral Facebook Post*, NY Mag (Sept. 5, 2017) available at <http://nymag.com/selectall/2017/09/hillary-clinton-publishes-pony-facebook-post-in-new-book.html>.

29.     Mr. Supreme wishes to organize a peaceful protest outside of the book signing event to criticize Mrs. Clinton's criticism of his political platform.

30.     To ensure that his message is understood, he has procured live ponies to bring with him to the outdoor protest, because they are symbols of his political platform.

31.     Mr. Supreme asked one of his political organizers, Keith Yergeau ("Mr. Yergeau"), to call the CPD to inquire about any requirements for the protest on his behalf, which included obtaining a permit to bring the live ponies.

32.     On November 20, 2017, Mr. Yergeau called the CPD at Mr. Supreme's direction and spoke to Officer John Doe.

33.     When Mr. Yergeau inquired about obtaining a permit for the ponies, Officer John Doe told Mr. Yergeau that he would need to call CAD to obtain a permit for the ponies.

34.     Mr. Yergeau complied with Officer John Doe's direction and contacted the CAD to inquire about obtaining the needed permit for the ponies immediately afterwards.  He left a message at CAD.

35.     On November 21, Eugene Blake ("Mr. Blake") called Mr. Yergeau back and identified himself as a Health and Licensing Officer with the CHLSD; however, Mr. Blake did not make it specify how he was associated with CAD.

36.     Mr. Blake told Mr. Yergeau that there were no *general* restrictions on having ponies outdoors at that location, and that *ordinarily* he would grant the permit to have the pony at that location.

37.     However, Mr. Blake said that the CPD directed him not to grant a permit for the ponies on that day, and at that location, specifically because no one wanted to interfere with Mrs. Clinton's book signing.

*38.*   Mr. Blake mentioned that the CPD mentioned something about coordinating with the Secret Service, given Mrs. Clinton's status as the former First Lady she would be accompanied by them.

39.   *Mr. Blake said that Mr. Yergeau could* obtain a permit to have the live ponies at that location on another date or time, but noted specifically that Mr. Yergeau could not have a permit to bring the live ponies outside of Mrs. Clinton's book signing.

40.   Mr. Yergeau attempted to negotiate with Mr. Blake, and asked him if there were any circumstances whereby he would grant the permit for the ponies on the same date and location of the book signing.

41.   Mr. Blake refused, and said that he would not issue the permit on the date and location outside the bookstore under any circumstances.

42.   Given that Mrs. Clinton will likely only have a book signing of this particular book in the City of Concord once, and given that Mr. Supreme's groundswell of support is in New Hampshire, the ability to share his political speech at this protest is a sui generis opportunity.

43.   Since the ponies are symbols of Mr. Supreme's political speech, the message will be lost if Mr. Supreme cannot obtain a permit to bring the ponies to the scheduled protest outside of the book signing on the public pathways on December 5, 2017, and Mr. Supreme's First Amendment freedom of expression will be denied.

<u>CLAIMS FOR RELIEF</u>

**FIRST CLAIM FOR RELIEF**
**Violation of the First Amendment to the United States Constitution**
**under 42 U.S.C. § 1983**
**(Free Speech)**

44.   Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

45.     Plaintiff alleges that Defendants' conduct of refusing to issue him a permit and censoring his right to engage in direct political expression is unconstitutional and violates his First Amendment rights to freedom of speech and expression, and freedom of petition.

46.     Plaintiff alleges that Defendants' conduct, wherein Defendants directed Plaintiff not to engage in specific and politically motivated speech, is unconstitutional and violates his First Amendment rights to freedom of speech and expression, and freedom of petition.

47.     Plaintiff alleges that Defendants have not provided an administrative appeal process.

48.     Plaintiff has been injured, or reasonably fears imminent injury, by these constitutional violations, and Plaintiff is entitled to relief.

### SECOND CLAIM FOR RELIEF
### Violation of New Hampshire Const., Article 22
### (Free Speech)

49.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

50.     Plaintiff alleges that Defendants' conduct of refusing to issue him a permit and censoring his right to engage in direct political expression is unconstitutional and violates his rights to freedom of speech and expression, and freedom of petition protected by New Hampshire Const., Art. 22.

51.     Plaintiff alleges that Defendants' conduct, wherein Defendants directed Plaintiff not to engage in specific and politically motivated speech, is unconstitutional and violates his rights to freedom of speech and expression, and freedom of petition protected by New Hampshire Const., Art. 22.

52.     Plaintiff has been injured, or reasonably fears imminent injury, by these constitutional violations, and Plaintiff is entitled to relief.

**THIRD CLAIM FOR RELIEF**
**Violation of the Fourteenth Amendment to the United States Constitution**
**Under 42 U.S.C. § 1983**
**(Substantive Due Process)**

53.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if set forth fully herein.

54.     Plaintiff alleges that Defendants' conduct, wherein Defendants directed Plaintiff not to engage in specific and politically motivated speech by refusing to issue a permit on a targeted date and time is unconstitutional and violates his due process rights under the Fourteenth Amendment.

55.     Plaintiff has been injured, or reasonably fears imminent injury, by these constitutional violations, and Plaintiff is entitled to relief.

**FOURTH CLAIM FOR RELIEF**
**Violation of New Hampshire Const., Art. 15**
**Under 42 U.S.C. § 1983**
**(Substantive Due Process)**

56.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if set forth fully herein.

57.     Plaintiff alleges that Defendants' conduct, wherein Defendants directed Plaintiff not to engage in specific and politically motivated speech by refusing to issue a permit on a targeted date and time is unconstitutional and violates his due process rights under the New Hampshire Const., Art. 15.

58.     Plaintiff has been injured, or reasonably fears imminent injury, by these constitutional violations, and Plaintiff is entitled to relief.

**FIFTH CLAIM FOR RELIEF**
**Violation of the Fourteenth Amendment to the United States Constitution**
**Under 42 U.S.C. § 1983**
**(Procedural Due Process)**

59.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

60.     Plaintiff alleges that Defendants' conduct, wherein Defendants directed Plaintiff not to engage in specific and politically motivated speech by refusing to issue a permit on a targeted date and time is unconstitutional and violates his due process rights under the Fourteenth Amendment.

61.     Plaintiff further alleges that Defendants appeared to have unfettered discretion and lacked a procedure to guide their decision making when they denied the permit.

62.     Plaintiff further alleges that Defendants have not provided an administrative appeal process to challenge what Plaintiff perceives as a targeted and unfair decision.

63.     Plaintiff has been injured, or reasonably fears imminent injury, by these constitutional violations, and Plaintiff is entitled to relief.

### SIXTH CLAIM FOR RELIEF
### Violation of New Hampshire Const., Art. 15
### Under 42 U.S.C. § 1983
### (Procedural Due Process)

64.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

65.     Plaintiff alleges that Defendants' conduct, wherein Defendants directed Plaintiff not to engage in specific and politically motivated speech by refusing to issue a permit on a targeted date and time is unconstitutional and violates his due process rights under the New Hampshire Const. Art. 15.

66.     Plaintiff further alleges that Defendants appeared to have unfettered discretion and lacked a procedure to guide their decision making when they denied the permit.

67.     Plaintiff further alleges that Defendants have not provided an administrative appeal process to challenge what Plaintiff perceives as a targeted and unfair decision.

68.     Plaintiff has been injured, or reasonably fears imminent injury, by these constitutional violations, and Plaintiff is entitled to relief.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff respectfully seeks judgment as follows:

a.     A declaration that the Defendants conduct is unconstitutional under the First and Fourteenth Amendments of the United States, and Articles 15 and 22 of the New Hampshire Constitution;

b.     A preliminary and permanent injunction compelling Defendants to issue a permit to Plaintiff so that he may engage in First Amendment protected activities and enjoining each Defendant from interfering with Plaintiff's right to lawfully engage in constitutionally protected expression and activity within Merrimack County;

c.     Damages in an amount to be determined at trial;

d.     An award of attorneys' fees and expenses under 42 U.S.C. § 1988; and

e.     Any further relief the Court deems appropriate.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all causes of action.

Dated: December 1, 2017.          Respectfully submitted,

/s/ Arpiar M. Saunders
Arpiar M. Saunders
(NH Bar No. 265178)
SAUNDERS & SILVERSTEIN LLP
14 Cedar Street, Suite 224
Amesbury, MA 01913
Tel:   978-463-9100
Fax:  978-463-9109
Email: msaunders@sandsip.com

Marc J. Randazza
*Pro Hac Vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, NV 89147
Tel: 702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

RANDAZZA | LEGAL GROUP

Complaint